UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CONNIE JANORICH WYNN,**

        **Plaintiff,**

**v.**                                                       **Case No:   6:13-cv-1092-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OF DECISION

Connie Janorich Wynn (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for disability insurance benefits and supplemental security income benefits.  Doc. No. 1.[1]  Claimant argues that the Administrative Law Judge (the "ALJ") erred by: 1) failing to consider all the relevant medical evidence in determining her residual functional capacity ("RFC"); 2) posing a hypothetical question to the Vocational Expert ("VE") that did not account for all of her functional limitations; and 3) finding her testimony concerning her pain and limitations not credible.  Doc. No. 19 at 8-21.  For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

**I.**      **THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

---

[1] Claimant alleges a disability onset date of June 1, 2009.  R. 19.

disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## II.   STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (the court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III.   ANALYSIS.

#### A.   RFC.

At the center of this dispute is whether the ALJ considered all of the relevant medical evidence concerning Claimant's ability to stand and walk, and thus whether the ALJ's RFC determination is supported by substantial evidence. Doc. Nos. 19 at 8-13; 20 at 8-14. At step four of the sequential evaluation process, the ALJ must determine a claimant's RFC and ability to do past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). While the claimant bears the burden of showing that he or she can no longer perform his or her past relevant work, *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986), the ALJ bears the responsibility for determining the claimant's RFC. *See* 20 C.F.R. § 404.1527(d), (e). The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). In evaluating the claimant's RFC, the ALJ considers the claimant's ability to "meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4),

416.945(a)(4). The ALJ must consider all of the claimant's medically determinable impairments, even those not designated as severe. *Id*. §§ 404.1545(a)(2), 416.945(a)(2). If the claimant can still do the kind of work he or she has done in the past, then the regulations require that the claimant be found not disabled. 20 C.F.R. § 404.1520(f).

The record contains several medical opinions addressing Claimant's RFC, particularly her ability to stand and walk. On March 9, 2010, Dr. Violet Stone, a non-examining physician acting as a state agency consultant, completed a physical RFC assessment. R. 366-73. In it, Dr. Stone opined that Claimant can stand and/or walk for a total of "about 6 hours in an 8-hour workday." R. 367. In support, Dr. Stone noted Claimant's history of chronic foot pain from plantar fasciitis and mild right side weakness, which has resolved, as well as a treatment note from February 6, 2010, which indicates that Claimant had normal range of motion in her extremities, no motor or sensory deficit, and normal ambulation. R. 367-68, 371.

On August 10, 2010, Dr. Nitin Haté performed a one-time consultative examination of Claimant. R. 457-59. Dr. Haté indicated that one of Claimant's chief complaints is right side weakness. R. 457. Dr. Haté noted that Claimant has not undergone physical therapy, but carries a cane in her right hand. *Id*. Upon examination, Dr. Haté noted that Claimant has an antalgic gait, and that she tends to drag her right leg. R. 458. Dr. Haté further noted that while Claimant uses a cane, she is able to ambulate without it. *Id*. Following his examination and review of Claimant's medical records, Dr. Haté concluded that Claimant "may [have] residual weakness on the right side, which may have persisted due to [a] lack of . . . physical therapy." R. 459. With respect to Claimant's ability to work, Dr. Haté opined that she "may have some difficulty in strenuous activity." *Id*.

On August 30, 2010, Dr. Loc Kim Le, a non-examining physician acting as a state agency

consultant, completed a physical RFC assessment.  R. 480-87.  In it, Dr. Le opined that Claimant can stand and/or walk for a total of "about 6 hours in an 8-hour workday."  R. 481.  In support of this finding, Dr. Le noted Claimant's history of chronic foot pain from plantar fasciitis and mild right side weakness, which has resolved.  R. 485.  In addition, Dr. Le noted the following: the February 6, 2010 treatment note detailed above; a hospital discharge summary from July 6, 2010, noting that Claimant's right side weakness had resolved; and Dr. Haté's consultative examination report.  R. 487.[2]

At step four of the sequential evaluation process, the ALJ provides a detailed and accurate discussion of the medical record, opinion evidence, and Claimant's testimony.  R. 24-7.  Upon consideration of this evidence, the ALJ found Claimant has the RFC to perform a limited range of light work.  R. 23.[3]  Specifically, the ALJ found:

> [Claimant] requires a cane for ambulation and can only stand and walk for 4-hours in an 8-hour workday with the opportunity to alternate to a sitting position for approximately 10 minutes while on task.  Sitting can be done for 6 hours in the 8-hour period. [Claimant] should never crawl or climb ladders, ropes, scaffolds or work at dangerous heights or with dangerous moving machinery. The claimant can only perform simple routine tasks with only occasional changes in the work setting and occasional interaction with the public.

*Id*.  In reaching this RFC determination, the ALJ considered Dr. Stone's, Dr. Haté's, and Dr. Le's

---

[2] The discharge summary noted by Dr. Le, stemmed from Claimant's admission to the Florida Hospital on July 4, 2010.  R. 418-39.  Claimant was discharged on July 6, 2010, and her discharge summary stated the following: "[Claimant] was admitted with right-sided weakness but her MRI/MRA was unremarkable, and her exam was very inconsistent when working with physical therapy with [(sic)] neurology consultation.  Her right-sided weakness has resolved and there is a strong possibility of an underlying psychiatric component."  R. 418.

[3] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).

opinions, and assigned each of their opinions significant weight. R. 27.[4]

Claimant challenges the ALJ's RFC determination concerning her ability to stand and walk, arguing that the ALJ's statements during the hearing and the medical evidence of record support a more restrictive RFC. Doc. No. 19 at 10-13. At the hearing, the ALJ stated that she found Dr. Haté's observation of Claimant dragging her foot "pretty significant." R. 54-55. At the conclusion of the hearing, the ALJ stated:

> [W]ell hopefully we'll be totally enlightened by the records from June and then I'll be able to put things together. But, you know, I feel that I would be able to issue a favorable [decision] from let's say June 2010. And we'll see if we can go back further.

R. 59. Claimant suggests that the ALJ failed to recall the foregoing statements when rendering her decision, and that if she had done so, her decision would have been different. Doc. No. 19 at 11. Claimant also cites to the following medical evidence, arguing that it demonstrates that her ability to stand and walk is more limited than that reflected in the ALJ's RFC determination: a June 18, 2009 treatment note indicating tenderness to palpation in both feet, and a referral to a podiatrist due to severe difficulty with walking (R. 307);[5] a February 23, 2010 notation by Dr. Joanna Vilar, a one-time consultative mental health examiner, indicating that Claimant left the examination walking slowly and limping on her left foot (R. 362); an April 3, 2010 hospital treatment note indicating mild bilateral paresthesia in the lower extremity (R. 376); a December 8, 2010 treatment note indicating that Claimant has a history of sharp pain and numbness in her feet, and a neurological examination revealing "tender diffusely with decreased sensation generally" (R. 496); and an April 7, 2011 hospital treatment note indicating right lower extremity weakness

---

[4] The record does not contain any treating physician opinions concerning Claimant's functional capacity. *See* R. 306-522.

[5] There is no evidence that Claimant ever began treatment with a podiatrist. *See* R. 40-59, 306-522.

of about "3 to 4/5" (R. 505).  Doc. No. 19 at 12.

The Court finds Claimant's arguments unavailing for three (3) principle reasons.  First, Claimant cites no authority prohibiting the ALJ from changing his or her position on a particular issue between the hearing and the time of his or her decision.  *See* Doc. No. 19 at 11; *see also George v. Astrue*, 2012 WL 3030157, at *5 (N.D. Ala. July 20, 2012) (noting that "there is no rule preventing an ALJ from changing his mind between the hearing and the time of his decision").[6]  Accordingly, the ALJ is not bound by any findings made at the hearing, and can reach a different conclusion as long as that conclusion is supported by substantial evidence.  Second, while the evidence cited by Claimant indicates that she suffers from impairments which affect her ability to stand and walk, it does not establish that her ability to stand and walk is more limited than that contained in the ALJ's RFC determination.  Third, the ALJ's RFC determination concerning Claimant's ability to stand and walk is supported by substantial evidence.  For example, the ALJ assigned significant weight Dr. Haté's examination report, who indicated that Claimant could ambulate without a cane and should only avoid strenuous activity, as well as Dr. Stone's and Dr. Le's opinions, who opined that Claimant could stand and/or walk for about six (6) hours in an eight (8) hour workday.[7]  Since the ALJ's RFC determination concerning Claimant's ability to stand and walk is supported by substantial evidence, Claimant's argument challenging the same is unavailing.  *E.g.*, *Edwards*, 937 F.2d at 584 n.3 (where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a

---

[6] To the extent Claimant raises a due process argument concerning the ALJ's statements at the hearing, the Court is not persuaded.  Although it was arguably improper for the ALJ to indicate that she would likely rule in Claimant's favor, the ALJ never definitively stated that she found Claimant to be disabled, but rather indicated that she needed additional records to determine whether Claimant is disabled.  R. 54-9.  Further, Claimant has not demonstrated that she was prejudiced by the ALJ's statements, or otherwise deprived of a fair and impartial hearing.  *See* Doc. No. 19 at 10-13.  Accordingly, the Court finds that the ALJ did not violate Claimant's right to due process.  *See Lindsey v. Barnhart*, 161 F. App'x 862, 870 (11th Cir. 2006) (per curiam).

[7] Claimant does not challenge the weight assigned to these opinions.  *See* Doc. No. 19.

contrary result as the finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision).

### B. Hypothetical to VE.

Claimant also argues the ALJ's hypothetical question to the VE fails to account for her limited ability to stand and walk and her moderate limitations in concentration, persistence and pace, and social functioning. Doc. Nos. 19 at 13-16; 20 at 14-16. Once the claimant proves that he or she can no longer perform his or her past relevant work, as is the case here (R. 29), the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d 1224, 1228-30 (11th Cir. 1999) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). An ALJ may rely on the testimony of a VE in determining whether the claimant can perform other jobs in the national economy. *Id*. at 1229. The ALJ is required to pose hypothetical questions which are accurate and which include all of the claimant's functional limitations. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). However, the ALJ need not include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or medical "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Where the ALJ relies on the VE's testimony at step five, but fails to include all the claimant's functional limitations in the hypothetical question, the final decision is not supported by substantial evidence. *Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).[8]

At the hearing, the ALJ posed the following hypothetical question to the VE:

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981

> I would like for you to consider that such an individual is limited to a range of light work as described in the regulations but requires a cane for ambulation. And let's say she can only stand and walk for four hours in the eight hour period for only one hour at a time before needing to alternate to a sitting position for ten minutes while on task. Additionally[,] the individual is limited in that they cannot climb ladders, ropes or scaffolds, work at heights or with dangerous moving machinery, no crawling. Additionally[,] the individual is limited to tasks that are simple and routine with only occasional change in the work setting, and occasional interaction with the public.

R. 53. In response, the VE testified that the individual could perform work as a small products assembler II, a sorter, and a gluer. R. 53-4. The ALJ subsequently relied on the VE's testimony in determining that Claimant could perform work in the national economy that exists in significant numbers. R. 30.

### 1. Ability to Stand and Walk.

Claimant argues that the ALJ's hypothetical question to the VE does not account for her limited ability to stand and walk. Doc. No. 19 at 13-15. The success of this argument is contingent upon the success of Claimant's argument challenging the ALJ's RFC determination. *Compare* Doc. No. 19 at 10-13 *with Id*. at 13-15. As discussed above, the ALJ's RFC determination, more specifically her determination concerning Claimant's ability to stand and walk, is supported by substantial evidence. *See supra* at 7-8. Accordingly, Claimant's argument is unavailing since the ALJ's hypothetical question to the VE was consistent with her RFC determination.

### 2. Concentration, Persistence and Pace and Social Functioning.

At step three of the sequential evaluation process, the ALJ found that Claimant had moderate limitations in maintaining concentration, persistence and pace, and social functioning. R. 22-3. Claimant argues that "[i]t is not clear if the limitation to unskilled work . . . account[s]

for all of [her] mental limitations . . ., especially with regard to [her] moderate difficulties in concentration, persistence and pace."   Doc. No. 19 at 15-16.

In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that if a claimant is found to suffer moderate limitations in concentration, persistence, and pace, the ALJ must either "indicate that medical evidence suggested [that claimant's] ability to work was unaffected by [those] limitation[s]," or include those limitations, either explicitly or implicitly, in the hypothetical question(s) posed to the VE.  *Id*. at 1181.  Since *Winschel*, the Eleventh Circuit has recognized that a hypothetical question could sufficiently account for moderate limitations in concentration, persistence, and pace by including a restriction to simple or routine tasks, if the medical evidence demonstrates that the claimant has the ability to perform those tasks despite such limitations.  *See, e.g.*, *Neefe v. Comm'r of Soc. Sec.*, 531 F. App'x 1006, 1007 (11th Cir. 2013); *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907-08 (11th Cir. 2013); *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950-51 (11th Cir. 2013); *Washington v. Soc. Sec. Admin., Comm'r*, 503 F. App'x 881, 883 (11th Cir. 2013); *Scott v. Comm'r of Soc. Sec.*, 495 F. App'x 27, 29 (11th Cir. 2012); *Syed v. Comm'r of Soc. Sec.*, 441 F. App'x 632, 634-35 (11th Cir. 2011); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 871-72 (11th Cir. 2011).

At step four of the sequential evaluation process, the ALJ stated the following:

> In summary, although the claimant was noted to have a possible mental impairment with depression and anxiety when hospitalized for her physical symptoms in July 2010 and April 2011, there is no evidence of mental health hospitalization or ongoing mental health treatment.  Further, the medical evidence documents normal findings on consultative evaluation in February 2010, consisting of full orientation and alertness, normal speech, full and appropriate affect and intact short-term and long-term memory.  Also, when evaluated in July 2010, mental status findings were unremarkable and the claimant was assessed as having a GAF of 60, showing only borderline moderate limitation in severity of symptoms or problems in functioning (Exhibit 7F).  Moderate depression was noted on

screening in March 2011 (Exhibit 7F). After reviewing the record, the [ALJ] also considered the claimant's depression and anxiety severe, but not disabling.

In reaching this conclusion the [ALJ] has considered the medical opinion evidence. Bruce Hertz, Ph.D., a state agency mental health consultant completed a psychiatric review technique form and mental [RFC] assessment [on] August 13, 2010. Dr. Hertz assessed mild limitations in social functioning, moderate limitations in activities of daily living and concentration, persistence, or pace, and no episodes of decompensation each of extended duration (Exhibit 11F/11). Dr. Hertz opined that while the claimant had some mental deficits they would not prohibit her from carrying out at least daily functions independently (Exhibit 12F). The [ALJ] affords some weight to the assessment of the state agency consultant, as [it is] supported by [the] consultative evaluation revealing normal findings on mental examination and GAF of 55, as well as evidence on hospitalization in July 2010, and concludes that the claimant's mental impairments result [in] some degree of limitation in mental work-related functioning. Dr. Hertz also considered the claimant's reported activities of daily living and ability to socialize when necessary.

. . .

*The [ALJ] has found that the claimant has a moderate limitation under the broad area of concentration, persistence, or pace of the "B" criteria rating based upon factors cited earlier in the decision, including the clinical mental status findings of fair concentration and memory. When determining the appropriate limitations to include in the mental [RFC] to reflect this degree of severity in the broad area of concentration, persistence or pace, the [ALJ] has included specific limitations in task complexity. The [ALJ] has restricted claimant to simple tasks, as simple tasks do not require the degree of concentration or persistence required of more detailed or complex tasks. The [ALJ] has also included a limitation to routine tasks and only occasional change in the work setting as tasks that are routine and do not involve more than occasional change in the work-place would require less concentration and persistence than tasks that vary significant[ly] during the work day or work situations that change frequently. The [ALJ] has not identified a specific limitation in pace under this broad area and has not included a mental work-related limitation in pace in the [RFC] for tasks of such low complexity and limited change.*

> *The [ALJ] has found that the claimant has a moderate limitation under the broad area of social functioning of the "B" criteria based upon factors cited earlier in the decision, including the claimant's statements of having problems dealing with others, but also the references [of] some degree of socialization and the benign mental status findings. When determining the appropriate mental work-related limitations to include in the mental [RFC] to reflect the degree of limitation in this area, the [ALJ] has included only occasional interaction with the public, decreasing the frequency of socialization in the workplace.*

R. 28-9 (emphasis added).[9] Accordingly, the ALJ found that Claimant is capable of performing simple, routine tasks with only occasional changes in the work setting and occasional interaction with the public, despite her moderate limitations in concentration, persistence and pace, and social functioning. R. 28-9. The ALJ's determination is supported by substantial evidence, and consistent with the holding in *Winschel*. *Id.*; *see Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 690-91 (11th Cir. 2013) (finding that the ALJ adequately accounted for claimant's moderate limitations in concentration, persistence and pace, and social functioning where the medical evidence indicated that he could perform "simple, one and two step tasks in a work setting with minimal social interaction and no public contact" despite such limitations). Furthermore, the ALJ's hypothetical question to the VE is consistent with her RFC determination, since it includes limitations to simple, routine tasks, with only occasional changes in the work setting, and occasional interaction with the public. *Compare* R. 23 *with* R. 53. Therefore, the VE's testimony provides substantial evidence that Claimant could perform other work in the national economy. Accordingly, the Court finds Claimant's argument concerning the ALJ's reliance on the VE's testimony at step five unavailing.

---

[9] Claimant does not challenge the ALJ's discussion of the evidence concerning her mental impairments or the weight assigned thereto. *See* Doc. No. 19.

**C. Credibility.**

Claimant also argues the ALJ erred in finding Claimant's testimony concerning her pain and limitations not credible. Doc. Nos. 19 at 16-21; 20 at 8-14. In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be: 1) evidence of an underlying medical condition and either 2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or 3) evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). "20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; 20 C.F.R. § 404.1529.[10] Thus, once the pain standard is satisfied, the issue becomes one of credibility.

---

[10] Social Security Ruling 96-7p provides: "2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *1 (1996).

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id*. at 1561-62; *see also* SSR 96-7p, 1996 WL 374186, at *2 ("It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562. The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Id*.

At step two of the sequential evaluation process, the ALJ found that Claimant suffers from the following severe impairments: diabetes with peripheral neuropathy, history of transient ischemic attacks, depression, and anxiety. R. 21. At step four of the sequential evaluation process, the ALJ found that Claimant's impairments could reasonably be expected to cause her alleged symptoms, but concluded that Claimant's testimony concerning the intensity, persistence, and limiting effects of her symptoms was not credible to the extent it is inconsistent with her RFC determination. R. 24. In support, the ALJ stated the following:

> In terms of the claimant's alleged physical impairments, the [ALJ] finds that she is not fully credible regarding her symptoms, functional limitations, or inability to engage in work activity on a consistent and sustained basis. In summary, the medical evidence demonstrates that the claimant has a history of transient ischemic attacks and right sided weakness, but these conditions resulted in only mild weakness that has essentially resolved after June 2009. There are some reports of inconsistency on examination; however, the claimant's numerous diagnostic studies including brain CT scan, and MRI/MRA were unremarkable for stroke or pharmacologically induced ischemia in July 2010 and April 2011. In July, 2010, on neurological examination, her physical examination was characterized by poor effort and the examining physician suggested the strong possibility of an underlying psychiatric component

> (Exhibit 7F). On consultative examination in August 2010, the claimant was noted to tend to drag her right foot and use a cane, but also to have full strength, sensation and coordination and to be able to walk without the cane (Exhibit 10F). The claimant was initially noted to have decreased right upper extremity strength when hospitalized in April 2011, but again MRA/MRI of the brain and CT of the head were noted to be normal, and she was discharged with a referral for psychiatric examination/counseling (Exhibit 16F). Moreover, echocardiogram and myocardial perfusion scan showed no significant cardiac abnormality in June 2009, and in April 2010, an echocardiogram showed normal left ventricular function and exercise stress test was again negative for ischemia (Exhibits 19F and 5F). Regarding the claimant's diabetes and hypertension, the medical evidence reflects that the conditions were initially poorly controlled, but eventually stabilized with compliance with treatment. Moreover, there is no indication that the claimant suffered any significant or major complications or end-organ damage because of her diabetes. There was some evidence of peripheral neuropathy with diffusely decreased sensation in December 2010 (Exhibit 15F), but no evidence suggesting diabetic retinopathy or nephropathy or hypertensive heart disease (Exhibit 17F [and] 18F). The [ALJ] concludes that some degree of standing and walking limitations are appropriate, as well as postural and environmental limitations, but not that would preclude a limited range of light work. The [ALJ] has also considered the reported light housework, shopping for groceries, riding a bicycle and driving (Exhibits 17E [and] 26E, 3F and 10F). These activities are consistent with a limited range of light work.

R. 26-7. Accordingly, the ALJ found Claimant's testimony concerning the intensity, persistence, and limiting effects of her symptoms not credible for the following reasons: 1) the objective medical evidence demonstrates that Claimant's history of transient ischemic attacks and related right sided weakness is largely resolved and results in only mild functional limitations (e.g., limited ability to stand an walk); 2) the objective medical evidence demonstrates that Claimant's diabetes has stabilized with treatment; and 3) Claimant's daily activities are consistent with a limited range of light work. *Id*.

Claimant argues that the ALJ did not "make accurate and specific findings" as to her credibility, challenging nearly every aspect of the ALJ's foregoing credibility determination.

Doc. No. 19 at 18-21.[11]  As a result, Claimant argues that the ALJ's credibility determination is not supported by substantial evidence. *Id*. at 21. The Court disagrees. The ALJ's credibility determination accurately reflects the medical evidence she found insightful when considering Claimant's credibility. For example, Claimant takes issue with the ALJ's finding that her diabetes has stabilized with treatment and that she gave "poor effort" during her July 5, 2010 physical examination at the Florida Hospital. Doc. No. 19 at 19. However, the record supports these findings, as Claimant's treating physician twice indicated that she has maintained good control of her blood glucose (R. 492, 511), and the July 5, 2010 physical examination report indicated poor effort during the examination (R. 424).

Claimant also takes issue with the ALJ's reliance on her daily activities, arguing that they are not consistent with the performance of a limited range of light work. Doc. No. 19 at 20. The ALJ may consider the claimant's daily activities when evaluating his or her subjective symptoms, but the claimant's admission that he or she participates in daily activities for short durations does not necessarily preclude a finding that he or she is disabled. 20 C.F.R. § 404.1529(c)(3)(i); *see Lewis*, 125 F.3d at 1441 (noting that the claimant's successful completion of a six-minute treadmill exercise was not necessarily indicative of his ability to work, and that the fact that he did housework and went fishing was not inconsistent with the limitations recommended by his treating physicians). Here, the ALJ's discussion of Claimant's daily activities, while brief, is accurate and supported by the record. *See, e.g.*, R. 299-300, 362, 459. As a result, and considering the ALJ's RFC determination, the Court finds that the ALJ's determination that Claimant's activities of daily living are consistent with a limited range of light work is supported by substantial evidence. In light of the foregoing, the Court finds that the ALJ articulated good cause for discrediting

---

[11] Claimant does not challenge any aspect of the ALJ's credibility determination as it relates to her mental impairments. *See* Doc. No. 19 at 16-21.

Claimant's testimony and that her reasons are supported by substantial evidence. *See Foote*, 67 F.3d at 1561-62 (reviewing court will not disturb credibility finding with sufficient evidentiary support).

### IV. **CONCLUSION**.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment in favor of the Commissioner and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on August 19, 2014.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Mary C Montanus
Administrative Law Judge
c/o Office of Disability Adjudication and Review
3505 Lake Lynda Dr.
Suite 300
Orlando, FL 32817-9801